# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OMEGA HOSPITAL, LLC | CIVIL ACTION |
| VERSUS | NO: 08-1427 |
| BLUE CROSS BLUE SHIELD OF MICHIGAN, ET AL | SECTION: "S" (1) |

## ORDER AND REASONS

The motion for summary judgment (Doc. #25) filed by defendant Blue Cross Blue Shield of Michigan is **DENIED**. The motion for summary judgment filed by plaintiff Omega Hospital, LLC (Doc. #24) is **DENIED**.

## BACKGROUND

Plaintiff Omega Hospital, LLC, contends that defendant Blue Cross Blue Shield of Michigan precertified and verified coverage for three of its insureds who later received care in plaintiff's facility. Omega alleges that after treatment was rendered, the claims were presented to defendant for payment, but the claims were later partially and/or fully denied as not covered. Specifically, Omega contends that three patients, identified by pseudonyms Jody H., Maribeth N., and Lori J., underwent surgeries in its facility in October 2005, November 2005, and March 2006, and incurred medical expenses of $73,946; $125,644.11; and $52,062.04, respectively, which were not correctly

reimbursed by Blue Cross.[1] Omega contends that but for verbal assurances of coverage from Blue Cross during Omega's verification process, it would not have accepted the three patients for the treatment. Plaintiff claims that defendant's actions were in bad faith and claims attorney's fees under La. Rev. Stat. 9:2781.

Defendant Blue Cross, an administrator of health insurance plans for individual and corporate subscribers, contend that Omega's claims were partially or fully denied because Omega is not, nor has it ever been, under contract with Blue Cross as a participating provider of healthcare services. Blue Cross has counterclaimed that Omega was unjustly enriched because Blue Cross overpaid Omega on Jody H.'s claim, $101,243.35 for the June 22, 2005, surgery and $6,396.84 for the October 18, 2005, surgery. Blue Cross also seeks attorney's fees under 29 U.S.C. §1132(g)(1).

It is undisputed that Omega is not a participating hospital within the Blue Cross network.

## ANALYSIS

**1. Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[2] If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.[3]

---

[1] Of the $73,946.49 billed for Jody H., $6,396.84 was paid, leaving a balance of $66,589.95. Of the $125,644.11 billed for Maribeth N., nothing was paid. Of the $52,062.44 billed for Lori J., $25,510.60 was paid.

[2] *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. Proc. 56(c).

[3] *Celeotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552 (1986).

## 2. Motions for Summary Judgment

a. Blue Cross' Motion for Summary Judgment

Blue Cross seeks summary judgment, dismissing Omega's claims against it and granting its counterclaim against Omega (discussed separately below). Blue Cross contends that Omega's claims fail because Omega's documents and depositions of Omega's employees reflect that before the surgeries of the three patients, Omega knew the actual and limited coverage for them.

At the heart of this dispute is the application of rules concerning Blue Cross' three categories of providers: "participating and in-network"; "participating but out-of-network"; and "non-participating." According Blue Cross, a provider under any contract with any Blue Cross insurer is a "participating provider"; and not all participating providers have agreed to every Blue Cross contract. Further, the term "in-network" applies to participating providers who have agreed to be in a particular Blue Cross PPO plan, and that "in-network" benefits extended to members covered by that PPO. The term "out-of- network" applies to participating providers who have not agreed to the particular Blue Cross contract.[4] On the other hand, a "non-participating" provider has no contract with any Blue Cross organization.

Blue Cross argues that Omega's personnel confused these terms; that Omega did not distinguish between the terms "out-of-network" and "non-participating"; that as a result, Omega concluded that there was coverage when there was none; and that Omega's phone records and Blue Cross' phone records substantiate that Blue Cross' representatives explained to Omega employees

---

[4] See attachments to the memorandum in support of summary judgment by Blue Cross (Doc. #25), Affidavits of Kristin L. Jackson, grievance and appeals coordinator for Blue Cross, regarding the Community Blue PPO plan; of Robert P. Thibodeau, national disputed claims specialist for Blue Cross regarding the Ford Medical Plan PPO plan; and of Sharon L. Moore, manager in the General Motors Corporation Delphi Policy and Administration, regarding the GM Plan. At her deposition, Deborah Schenk, Omega's hospital administrator, testified that she understood that the terms "out-of-network" and "non-participating" were different, and that "out of network" benefits applied sometimes to non-participating facilities under certain policies, an interpretation which is at odds with Blue Cross' interpretation.

that coverage for the three claims was limited only to that afforded to non-participating providers, according to the particular Blue Cross contract at issue.

Omega contends that questions of fact exist concerning whether an oral contract between Omega and Blue Cross existed as to the extent of coverage for the three claims. Omega argues that Blue Cross employees gave verbal assurances to Omega employees of much higher coverages, and that its contentions are supported by Omega forms which are entitled "primary insurance verification sheets." The verification forms are completed initially for each patient by an Omega employee. Then, on later dates, the verification sheet would be handled by either the same or another Omega employee, who would "verify" coverage through telephone conversations with Blue Cross representatives, and would hand-write on the form, dated and undated notes and in an abbreviated manner, the information that the Omega employee thought that the Blue Cross representative conveyed about coverage. The verification sheets are Omega's only documentary record of insurance coverage confirmation. Omega's verification of benefits and Blue Cross' phone records contain abbreviations and annotations which are not easily understood. Both are confusing.

1. *Jody H. Claim*

Jody H. is a dependent of an enrolled member of General Motors Corp.'s self-funded health benefits program (GM Plan) which is administered by Blue Cross. The GM program document states:

> The plan's payment for inpatient room and board charges with respect to non-participating hospitals (other than psychiatric hospitals) will be up to a maximum of $230 per day and payment for inpatient ancillary charges at such hospitals will be up to $20 per day (a total of $250 per day).

Jody H. had breast reconstruction surgery in June 2005 at Omega. The parties admit that Blue Cross paid Omega $101,243.35. Omega contends that this amount represents 90% of the

charges incurred. Blue Cross counterclaims that its payment was made in error; that as a non-participating hospital, Omega was only entitled to $250.00 per day, for a total of $750.00; and that Omega should remit the over payment (counterclaim discussed below).

Jody H. approached Omega for further surgery which occurred on October 18, 2005. Omega contends that Blue Cross told its personnel that 70% of the expenses would be covered, as noted on the verification forms. Omega presented expenses totaling $73,946.49, and Blue Cross paid $6,396.84. Blue Cross claims that as a non-participating hospital, Omega was entitled to only $250.00, and that the overpayment was due to a computer glitch (overpayment as discussed in counterclaim below).

The verification form for the second surgery contains notations that 90% would be paid to an out-of-network hospital, and that state "230.00 per day and 20.00 ancillaries for 'non par hospitals.'" The verification form also contains a note from Stacy Drennan, a former employee in the verification department of Omega, who wrote:

> incorrrect benefits given initially. The correct benefits were not given until the day prior to the surgery and the patient flew in already from Delaware. I spoke to Llew. Mason [a Blue Cross employee] on 10/19/2005 and she stated that Omega should attach a comment to the claims stating that due to Hurricane Katrina, the patient had to have this surgery here because of the conditions of the other hospitals.

Drennan attests through an affidavit that the Blue Cross representative told her that the $230.00 per day limitation did not apply to surgical procedures, leaving her with the "firm impression that there was 90 percent coverage for the surgical procedure," just as Blue Cross informed for Jody H.'s earlier surgery. Drennan further attests that if she had been told that the maximum coverage for the surgery would have been limited to $230.00 per day, she would have reported it to her superior because that "limitation was, in essence, no coverage."

The verification form and Blue Cross' records of the conversations between Blue Cross and Omega personnel are confusing. It is not clear what was communicated to Omega which provided the basis for the payment that Blue Cross subsequently made on the claims, albeit in error, according to Blue Cross. The court finds questions of material fact preclude summary judgment as to whether the communications between Blue Cross and Omega personnel constituted an agreement that Blue Cross would provide coverage to a greater extent than $250.00 per day of hospital admission.

.2. *Maribeth N. Claim*

Maribeth N. has healthcare coverage under Blue Cross' Community Blue PPO, which does not pay for services from non-participating facilities such as Omega, with an exception for treatment of a medical emergency or accidental injury. The Community Blue plan states:

> If the provider is non-participating, you will need to pay most of the charges yourself. Your bill could be substantial because [Blue Cross] coverage at non-participating hospitals is limited to services needed to treat an accidental injury or medical emergency.

Maribeth N. was treated at Omega on November 30, 2005. Omega presented a bill for $125,644.11, and Blue Cross paid nothing.

Relying on its verification form, Omega argues that its personnel was told that there was coverage for non-participating hospitals and that Omega would be paid 60% of the charges. The verification form also contains a noted dated November 25, 2005, by an Omega employee that Blue Cross "will only cover if admitted through ER. Will not cover admission for hospital."

These facts present a closer call as to whether there exists questions of material fact as to whether there existed an oral agreement to higher coverage, but nonetheless, the court finds such questions do exist, and denies summary judgment therefor.

3. *Lori J. Claim*

Lori J., through her husband, is an insured under the Ford Medical Plan PPO (Ford Plan) for salaried employees which is administered by Blue Cross. The Ford Plan document states:

> If the hospital is a [Blue Cross] non-participating hospital (does not participate with [Blue Cross] at all), the plans will pay a reduced benefit. In such cases, the plan recognizes 70% of covered charges and then pays a 70% benefit based on the recognized charges. This reduction results in a benefit program equal to 49% of covered charges. Non-participating hospitals cannot be used to meet your deductible, and are not applied to either your deductible or out-of-pocket maximum. You also may be required to pay a cash deposit at such hospitals before you can receive services. ...

The Ford Plan also distinguishes between a "participating hospital in the [Blue Cross] PPO network" and "participating hospital, but is not in the [Blue Cross] PPO network."

Lori J. had a second breast reconstructive surgery on March 24, 2006 at Omega.[5] Omega presented a claim for $52,062.44, of which Blue Cross paid $25,510.60, which represents 70% of 70% of the expenses incurred.

The "primary insurance verification sheets" for Lori J.'s claim contain what appears to be five hand-written "verification" notes by Omega employees regarding Blue Cross' coverage for Lori J.'s claims. Shawna Johnson, an employee in Omega's verification department, completed the primary insurance sheet for Lori J.'s claim, and wrote that "BC will pay 70% of 70% of allowable charges @ non-par facility* then will go into O/N benefits."[6] Johnson testified that she thought that meant that Blue Cross agreed that out-of-network benefits would apply. Schenk testified at her deposition that she could not interpret what Johnson wrote, and that from the verification sheet, some confusion existed as to coverage.

---

[5]Lori J. was originally scheduled for breast reconstructive surgery at Omega on August 29, 2005, but due to the hurricane, her surgery was rescheduled and done at another facility, Fairway Medical Center, on September 29, 2005.

[6]Blue Cross' records show several calls from Omega and a notation on March 15, 2006, that Blue Cross advised Heather of Omega "Nonpar 70% of 70%, Oon $900 Ded., 30% Coins, No Oop, No Precert."

As with Maribeth N., the facts surrounding Lori H.'s claims present questions of material fact as to whether there existed an oral agreement to higher coverage, and the court denies summary judgment therefor.

b. Omega Hospital, LLC's Motion to Summary Judgment as to Blue Cross' Counterclaim

Blue Cross claims that computer errors caused overpayment on Jody H.'s claims, and that Omega was unjustly enriched in the amount of $107,640.19, for the June 22 and October 18, 2005, surgeries.

The five requirements for establishing a claim for unjust enrichment are: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff.[7]

While arguably an enrichment, an impoverishment and a connection between the two exist, questions of material fact preclude summary judgment in Omega's favor as to Blue Cross' counterclaim of unjust enrichment. As to element four, the absence of justification or cause, Omega contends that coverages were at higher limits due to verbal assurances obtained by Omega employees from Blue Cross employees. For reasons already expressed, the court finds that questions of material fact exist as to whether and to what extent those assurances were made to Omega employees.

In sum, the court finds that questions of material fact preclude summary judgment on both motions. Hence, the motion for summary judgment by Blue Cross and the motion for summary judgment by Omega are **DENIED**.

---

[7]*Baker v. Maclay Properties Co.*, 649 So.2d 888, 897 (La. 1995)(holding that unjust enrichment claim existed in absence of contract between parties).

New Orleans, Louisiana, this 18th day of March, 2009.

_____
MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE